Van Vookhis, J.
This action concerns the sharing between two attorneys of the proceeds of a contingent fee earned in the prosecution of a death action in the United States District Court against the trustee of the Long Island Eail Eoad Company. The deceased was the husband of Frida S. Niedmann, and met his death in the Eichmond Hill wreck on November 22, 1950.
Plaintiff, Paul Maddaus, was retained by Mrs. Niedmann. According to his bill of particulars, plaintiff had Mrs. Niedmann appointed administratrix, drew the complaint, attended her examination before trial, opposed a motion to punish for con *36 tempt, conducted investigations, negotiations, and answered calendar calls over a period from November 22, 1950 until about January 12, 1953. Plaintiff then became ill and found bimself unable to continue his law practice.
Even before then, the onset of this illness, said to be some kind of glandular disturbance, had impaired his ability to practice. On August 19, 1952 he had written a letter to defendant (with whom he had collaborated for about 17 years), containing a proposal which was accepted by defendant in writing, constituting an agreement whereby defendant was to perform the necessary legal work on plaintiff’s cases, and included the following paragraph: ‘ £ It is agreed that your total compensation for your services as aforesaid will be one-third of any fees that I may receive in the Niedmann vs. Long Island Railroad Company case. Your compensation will become due and payable when I am paid.”
It was stated in this letter that plaintiff would remain responsible to the clients, and that defendant would therefore follow plaintiff’s directions and discretion when and if given. Differences arose between these lawyers over the conduct of these affairs, and on January 8,1953 plaintiff wrote the following-letter to the client, Mrs. Niedmann:
££ Dear Mrs. Niedmann:
£ £ "When you phoned the other evening-1 could [not] quite bring myself to say to you what I had on my mind, but now I had better get it over with.
££ The fact of the matter is that I am in no condition to go on with the above matter, or with any other matter, at the present time. My inclination would be to adjourn it again and again, and, if I were forced to trial, I would do a very poor job of it. I must, therefore, ask you to get yourself another attorney as soon as possible for I think that you would do best for yourself if the matter were disposed of as soon as possible. I should be glad to sign a substitution, in favor of any attorney you will designate to me in writing, and turn over the file to him.
££ At the present time the Railroad’s motion is adjourned to January 14, the case is adjourned until January 19 and the Railroad’s examination of Maddaus, Moelders and "Wagenbach is adjourned indefinitely. If you need more time to make *37 your arrangements I should he glad to request any further adjournments which may be necessary.
“ Of course, I make no claim upon you or the estate for work not completed through my own fault, nor would I accept any remuneration for such work. While the amount I would have! earned was very considerable, the loss is nothing at all, for all the money in the world will not buy me what I need — and without it, all the money in the world is worth nothing to me.
‘ ‘ In negotiating with another attorney, I think that you should make the point that the case is almost ready for trial that waiting is almost over and most of the paper work done and that, as a consequence, the new attorney should be entitled to no more than a maximum of 10% of recovery. You should have this in writing. I should be glad to look over the agreement of retainer — but it would be best if you did not tell him that I was doing so, just say that you wanted to think it over. You might even suggest 5% as a beginning, and come up if your man makes too much of a fuss. It is worth more to you than it is to him for you need pay no income tax upon the amount.
‘£ Of course, I wish you and Eric and your mother all the luck in the world and all the happiness that the future can possibly bring to you.
Sincerely yours,
/s/ Paul Maddaus ”
The papers in the action were delivered by plaintiff to his own father, Ingo Maddaus, who, in turn, delivered the file to defendant. Defendant reciprocated by writing this letter to plaintiff’s father (January 12, 1953):
£< Dear Mr. Maddaus:
At your solicitation, I have been retained by Mrs. Niedmann to represent her in the above action. The compensation is to be 33% of recovery, in the event that the said action is settled without going to trial and 40% of any recovery in the event that the said action goes to trial. It is understood that your son, Paul Maddaus, Esq. shall receive 50% of the fee to he paid when there is a recovery from the defendant.” (Italics supplied.)
Defendant tried the Niedmann case in the Federal court where a recovery was obtained, with interest, of $68,322.94. The complaint alleges that defendant received the sum of $22,567.18 as *38 a fee, but that he has refused to make payment to plaintiff after demand for one half, viz., $11,283.59. The complaint asks an adjudication that defendant received and held the fee impressed with a trust in favor of plaintiff to the extent of his half interest therein, and that it be decreed that defendant pay to plaintiff the sum of $11,283.59, with interest.
Defendant moved for summary judgment dismissing the complaint under rule 113 of the Rules of Civil Practice upon the ground that the answer contains defenses which are founded upon facts established prima facie by documentary evidence and official record. This motion was granted and the complaint dismissed by Special Term in an opinion stating that plaintiff withdrew from his retainer, and has shown nothing from which any trust relationship was created between himself and the defendant.
This order was reversed and defendant’s motion for summary judgment denied by the Appellate Division, First Department, in a memorandum stating: “In this action brought by an attorney to impress a trust upon legal fees received by the defendant, another attorney, we are of the opinion that the documentary evidence and quoted extracts from public records do not prove facts to establish prima facie any of the defenses set forth in the answer.”
The dissenting opinion at the Appellate Division stated concerning defendant’s letter of January 12th to plaintiff’s father, on which the complaint herein is based: “ Defendant’s letter of January 12th to plaintiff’s father was definitely an undertaking to pay plaintiff half of any fee that might be obtained by defendant. We need not consider whether such an agreement was illegal or without consideration, for that agreement and the undertaking thereunder was unequivocally repudiated and disclaimed by plaintiff in the affidavits he filed in the Federal court proceedings. The effect of the repudiation and disclaimer, for these were verbal acts and not admissions, was to completely end any purported obligation on the part of defendant.”
The alleged repudiation to which the dissenting opinion referred occurred in connection with a proceeding instituted in the Federal court, to determine whether plaintiff had a lien upon the recovery awarded to the Niedmann estate. That proceeding Avas begun at the instance of the attorney for the trustee of the *39 Long Island Bail Boad Company, -who knew that plaintiff had been the attorney of record in the Federal court action. He wanted to be sure that after the $68,322.94 recovery had been paid to Mrs. Niedmann as administratrix and to defendant, plaintiff could not assert any further claim upon the ground that any attorney’s lien of his had been knowingly defeated by payment of the recovery to others. A similar proceeding was instituted in the Surrogate’s Court, in order to clear the Niedmann estate from the possibility of such an attorney’s lien. Both of these courts held that plaintiff had no lien against the recovery, and that it might be paid with impunity by the trustee of the Long Island Bail Boad Company to the administratrix and defendant, and that the estate could be settled and distribated in the Surrogate’s Court without being subjected to such a charge. These holdings were, of course, entirely proper, inasmuch as plaintiff never claimed otherwise. He conceded that by his letter of January 8, 1953 he had relinquished any .lien upon the cause of action insofar as the client or the Long Island Bail Boad Company were concerned.
In writing the decision to this effect in the United States District Court for the Eastern District of New York, Judge Galston made the comment that plaintiff had renounced the agreement made by defendant with his father in the letter of January 12th. The opinion by the Surrogate said that plaintiff was not entitled to have any portion of the award for attorney’s fees distributed to him in the Surrogate’s Court proceeding.
A prior motion was made to dismiss the instant complaint under subdivision 4 of rule 107 of the Buies of Civil Practice upon the ground that the Surrogate’s decision was res judicata, which was denied at Special Term in the following memorandum: ‘ ‘ The present action is to impress a trust in favor of the plaintiff against the defendant in the sum of $11,283.59, alleged to represent one-half of the fee received by the defendant, for legal services, which the defendant in a letter dated January 12,1953, promised to pay. This agreement was not and could not have been litigated before the surrogate under Section 231-A of the Surrogate’s Court Act. Accordingly, the motion to dismiss the complaint is denied.” The Appellate Division unanimously affirmed the denial of that motion.
The present motion for summary judgment dismissing the complaint is therefore not based upon the ground of res judicata, *40 which was previously found wanting, hut on the independent basis that plaintiff withdrew from the case by his said letter of January 8, 1953 and his alleged repudiation in the Federal court of defendant’s agreement of January 12, 1953 to pay to plaintiff one half of his fee.
When defendant’s letter of January 12, 1953 addressed to plaintiff’s father was submitted in the Federal court proceeding, plaintiff evidently became alarmed lest it result in disciplinary action being taken against him as an attorney. He interposed an affidavit verified June 3, 1953 stating that the agreement to divide this fee ‘ ‘ is void as against public policy and canons #34 and #35 of the legal ethics code of the New York State Bar Association.” This affidavit called it a “ nullity and unenforceable ”, and in an affidavit verified June 10, 1953 in the Surrogate’s Court proceeding, said “ I could not accept benefits under it without compromise of my professional standards.”
Defendant contends on this appeal that these affidavits constituted an irrevocable disclaimer of this contract made with his father for his benefit.
The Appellate Division was right in declining to decide this issue upon a motion for summary judgment. None of the cases cited by either side is particularly helpful. No other case has followed the pattern of this one, or is likely to do so. What happened is essentially as follows: Plaintiff effectively withdrew from the negligence action by his letter of January 8, 1953, vis-a-vis the Niedmann estate; by that letter he consented, in effect, to the substitution of another attorney or attorneys, without the assertion of any claim or lien for his own services against the recovery or the railroad, and the order of substitution which defendant obtained in the Federal court on the basis of that letter was properly entered. The legal relationship between plaintiff and defendant was this: Plaintiff had entrusted defendant with the practical conduct of this litigation under his supervision about five months previously, and defendant had in consequence become familiar with the facts and the law, and had acquired a preferred position to continue the action for the client. Parenthetically it may be observed that plaintiff’s withdrawal on January 8th likewise terminated any right of defendant to recover a portion of plaintiff’s fees earned until then. Partly in consequence of obtaining a preferred position through handling the case for plaintiff and receiving possession *41 of the file from plaintiff’s father, defendant was enabled to continue under an independent retainer from Mrs. Niedmann as administratrix. As between these two lawyers, each performed effective legal service. Although the canons of ethics forbid the exploitation of the professional services of a lawyer by a layman or lay agency intervening between client and lawyer, fee-splitting is permitted “ with another lawyer, based upon a division of service or responsibility. ’ ’ (See canon 34, ‘ ‘ Division of Fees ”; and canon 35, “ Intermediaries ”.)
The intervention of plaintiff’s father as an intermediary on account of plaintiff’s illness hardly seems to be in violation of canon 35, nor is it probable that the division of this contingent fee provided by this agreement contravened canon 34, inasmuch as it was presumably intended to divide the fee in proportion to the division of services and responsibilities in connection with the conduct of this lawsuit (see Fried v. Cahn, 239 App. Div. 213, and cases cited). Certainly this letter agreement of January 12,1953 should not be held void on a motion for summary judgment as against public policy.
It may well be that if repudiation of this agreement by plaintiff had been material or relevant to Judge Galston’s decision in the Federal court, his decision would have been binding on the present issue. It appears to have been quite irrelevant to anything that was decided there. Plaintiff did not make any claim then or now against the trustee of the Long Island Bail Boad Company or the Niedmann estate for his fees; the arrangement was entirely with his brother lawyer, and he stands or falls entirely by whether or not he is entitled to recover from him. Judge Galston and the Surrogate were concerned entirely with acquittance of the Long Island Bail Boad Company and the estate against any claim which plaintiff could make, in order that the judgment in the negligence action might be paid and the estate distributed without fear that any claim might be made against them by plaintiff. Consequently it was irrelevant to Judge Galston’s decision or to that of the Surrogate whether or not plaintiff would make a claim against this defendant for a portion of the fee after it had been paid to him.
An expression of opinion by plaintiff that the agreement made between defendant and his father was unethical and that consequently he wanted to have nothing to do with it, which was irrelevant to anything which was being decided in the Federal *42 court or in the Surrogate’s Court, is not a final renunciation of his rights. Perhaps it might have been binding under the doctrine of estoppel if defendant had acted on it to his prejudice, or might have been res judicata if it had been material to Judge Galston’s or the Surrogate’s decisions. Neither of these situations is present here. Judge Galston’s decision was not urged as a ground for dismissing this complaint as res judicata on the prior motion, and the motion to dismiss on that ground was unsuccessful based on the order of the Surrogate. In any event, it would be erroneous to decide such a question upon motion for summary judgment.
The decision by the Appellate Division was, therefore, correct, and should be affirmed with costs.